## Harrison v. Drossner et al.

*Herman & Harris*, for plaintiff; *John J. McDevitt, Jr.*, for defendant.

KUN, J., January 2, 1934. — This proceeding originated on a petition for review filed by the defendant to correct an agreement for the payment of compensation which was alleged to have been entered into under a mistake of fact. It appears that the deceased husband of the claimant was employed by the defendant as a salesman and that he was killed on February 17, 1932, while in the course of his employment. It was assumed by the insurance carrier when it made an agreement to pay compensation to the widow that at the time of the husband's death he was receiving a guaranteed salary of $25 a week. This was due to erroneous information given to the carrier by a clerk in the defendant's employ. The true facts are these: The decedent had been employed August 21, 1931, on a commission basis but with a guaranteed salary of $25 per week. This arangement, however, was terminated on December 24, 1931, when the guaranteed salary was discontinued and the deceased was put on a straight commission basis. From that time until his death, a period of approximately 8 weeks, he did not receive any salary or guaranteed amount but only such commissions as he earned, the weekly average of which was $12.45. The referee and the compensation board, however, in the computation of the amount payable to the widow (and for a posthumous child) in finding the average "wages" of the decedent, considered the payments of $25 per week under the prior contract, resulting in a finding that the average wage was $23.54. In this, we think the compensation authorities erred.

The compensation board failed to apply the law to the facts as disclosed by the uncontradicted testimony that, whereas at the start of his employment the deceased was receiving a guaranty of $25 per week, that arrangement ended on December 24, 1931, and thereafter his contract of employment provided for payment of straight commissions to him without any guaranty; that is, he received only such commissions as he earned, and the weekly average of these up to the date of his death was $12.45 per week.

In section 309 of The Workmen's Compensation Act, it is provided: "Wherever . . . the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident". What was the "money rate" paid to the decedent under the "contract of hiring in force at the time of the accident" to the decedent? Clearly it was the commissions actually earned by him, and the guaranty of $25 per week paid to him under the prior arrangement had nothing whatever to do with it. It serves no purpose to argue, as it was to us, that

the mere change of rate of pay did not make a "new" contract. The question is purely academic in the instant case. It may be that for some purposes the contract of employment may be held to be the same one, as for the determination of any question of continuity of employment, but obviously the "money rate" of payment thereunder was changed and it is according to the "money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident", that the "wages" must be determined as provided in the quoted section of the act.

The ruling in Dugas v. American Zinc & Chemical Co. et al., 28 Dist. R. 34, is not at variance with our views. That was a case of a day laborer who, within the 6 months' period, was shifted from one kind of work to another, at different pay per day, so that was a typical case to which to apply the 6 months' provision of section 309 of the Compensation Act because the wages were fixed by the day. Every time the laborer was shifted from one kind of work to another, a new contract of employment was not made or, as the court put it, he was not "discharged and hired anew." It was not, in our opinion, necessary to decide the case on that point. The real basis of that decision, in our opinion, is that there was no contract of employment in that case in the legal sense, which implies an employment for a term at a weekly, monthly, or yearly salary, and what the court really decided was that, the laborer being employed by the day, though his day wage was changed according to the work he did, this did not affect the continuity of his employment, so that he was entitled to the benefit of the other provision in section 309 of the act, permitting in the case of "continuous employments" where the rate of wages is fixed by the "day or hour, or by the output" of the employe the computation of the weekly wage as the average of such rate over a period of 6 months prior to the accident.

In the case before us, as stated, the contract under which the deceased received an advance or guaranty of $25 a week was terminated, presumably because deceased had failed to earn sufficient commissions to justify the continuation of such payment, and he was put on a straight commission basis. That was "the contract of hiring in force at the time of the accident" and the compensation in this case should be calculated on the basis of the "money rate" at which the decedent was paid at the time of the accident; that is to say, on the basis of the commissions actually earned or the weekly average thereof during the period the deceased was working for the defendant on that basis. It is to be noted also that the last-quoted words of the act are followed by the words "and shall not include gratuities." To the extent that the $25 per week paid decedent under the former contract was in excess of his commissions actually earned, it was in a sense a gratuity. The claimant might in the circumstances have gone back for a period of 6 months prior to the death of the decedent to arrive at the average weekly commissions actually earned, but no point was made of that in the case. Perhaps if that were done, the result would be to reduce the average weekly wage. However, the case was put to us on the alternative of taking the average commissions under the contract of hiring at the time of the accident for the 8 weeks it had been in existence or to include in the calculations the consideration of the $25 a week guaranty which had been paid the decedent under the former provision of the contract requiring such payment.

We hold that the compensation in this case must be based on the weekly wage as found from the "money rate at which the service rendered . . . [was] recompensed under the contract of hiring in force at the time of the accident," as directed by the statute. This is limited to straight commissions actually earned, and the weekly guaranty of $25 under the prior contract arrangement

between the parties cannot be taken into account for the simple reason that it was not "in force" at the time of the accident.

Accordingly, the appeal of the defendant from the decree of the Workmen's Compensation Board must be sustained and judgment entered in favor of the claimant for the sum of $3,375.15, the agreed calculation under this ruling.